UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FERNANDO BARROSO,

                       Plaintiff,                       **MEMORANDUM AND ORDER**
                                                                     12-CV-625 (RRM)(JMA)

- against -

OFFICE OF GENERAL COUNSEL, VICE
CHANCELLOR OF LEGAL AFFAIRS, CUNY,

                       Defendants.
-------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff *pro se* brought a lawsuit alleging age discrimination, pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., against the City University of New York ("CUNY") and the Vice-Chancellor of Legal Affairs, in his official capacity. Before the court is defendants' fully-briefed motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. Nos. 9–14, 16.) [1] For the reasons that follow, defendants' motion to dismiss is GRANTED.

## BACKGROUND

The following facts are drawn from the plaintiff's complaint, opposition papers, and supplemental materials[2] and are assumed to be true for the purposes of deciding this motion.

Plaintiff, born November 4, 1950, took a civil service exam and was hired by CUNY as a licensed exterminator around 1992. (Doc. No. 1 at 5.) After approximately ten years as an

---

[1] Subsequent to filing his opposition, plaintiff submitted approximately 43 documents "that were mistakenly not included with," though referenced in, his opposition to defendants' motion. (*See* Doc. No. 16.) The Court will accept these materials in support of plaintiff's opposition. *See* Order dated Dec. 19, 2012. For purposes of this motion, the Court takes all of plaintiff's allegations in his complaint, opposition papers, and supplemental materials as true.

[2] Although a court generally "may not look outside the pleadings when reviewing a rule 12[] motion to dismiss[,] . . . the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997).

1

exterminator, plaintiff began to apply for other jobs at CUNY with titles such as "laborer," "maintenance worker," "electrician helper," and "oiler position." (*Id*. (capitalization altered)); (Pl. Ltr. Br. Opp. to Mot. to Dismiss (Doc. No. 13) at 3.). Plaintiff applied to eleven such positions between April 2003 through September 2012, and, though interviewed several times, was not hired for any of these positions. (*See id*.) Nevertheless, plaintiff maintains that he was qualified for these positions given his experience as "a handyman (superintendent) in Astoria of 42 apartments . . . maintaining plumbing, electrical, painting, sanding, door closers, etc." and in "supervis[ing] 10 employees at (Cargo Loss) . . . moving furniture, stoves, refrigerators, wall units, T.V.s rugs, etc. (loading and unloading trucks)." (Doc. No. 1 at 5 (capitalization altered)). Additionally, plaintiff noted that he has received at least twelve recommendations during his employment at Hunter College and has received excellent job performance reviews "in the years 2007, 2008, 2010, and in the last evaluation [he] received covering year 2011, the indication was: 'Excellent candidate for promotion. Can be recommended without reservation.'" (Doc. No. 13 at 1–2.)

In addition to applying for various positions, beginning in November 2007, plaintiff spoke and wrote to numerous individuals in the CUNY organization complaining of his "unfair" treatment. (*See* Doc. No. 13 at 4–6.) Though he does not indicate the time, place, or context, plaintiff alleges that Danny Velez, an executive director, told plaintiff that he "will never get another job Hunter sees you as the only exterminator" and that Patrick Tobin, administrative superintendent, told plaintiff that "Hunter needs you also now your age is a factor."[3] (Doc. No. 1 at 5 (capitalization altered).) Additionally, on March 31, 2008, plaintiff met with Peter Monahan, Director of Human Resources, and explained that it was Tobin who had "not allowed

---

[3] Plaintiff also refers to this allegation, again without providing any context, in his letter to the Dean for Diversity and Compliance, dated December 5, 2011, where plaintiff states that "Superintendent Pat Tobin [ ] told me to my face that I will not be hired for jobs that I had applied for due to my age." (Doc. No. 16.)

2

[plaintiff] to advance" and who told plaintiff "on numerous occasions that [he] should not even bother applying for positions because [he] would not get them." (*Id*.) However, "nothing positive came of this" meeting with Monahan. (*Id*.) Again without providing any context, plaintiff alleges that "Mr. [Peter] Monahan said that this [age] was the reason I was being held back before he quit[]." (Letter to Dean for Diversity and Compliance, dated Dec. 5, 2011 (Doc. No. 16).)

Plaintiff also provides conflicting reasons for his inability to obtain these jobs. Plaintiff alleges that "Hunter has no incentive to promote me," that "[i]t would be inconvenient for them to give me a different job opportunity," and that he was "not allow[ed] to transfer into any other position because [Tobin] needed [plaintiff] in [his] current position." (Doc. No. 13 at 4–5.)

Plaintiff also wrote numerous letters between November 16, 2007, through December 5, 2011, to the president of Hunter College, the Director of Research and Negotiations, the Executive Director of DC-37 (apparently a union in which plaintiff is a member), the Acting Assistant Vice President of Facilities, and the Dean for Diversity and Compliance. (Doc. No. 13 at 4–5.) With the exception of the Acting Assistant Vice President of Facilities, plaintiff received a response to all of his letters. *Id*. Although plaintiff acknowledges that he received "undoubtedly nice words of encouragement," he complains that no one offered the "assistance [he] was seeking" and that no one "took any concrete steps to address his situation." (*Id*.) At some point in 2011, plaintiff met with the Director of Campus Planning and Management, who told plaintiff "that there was nothing [the Director] could do, and that [plaintiff] should just keep on applying for job openings." (*Id*. at 5.) Subsequently, on January 13, 2012, plaintiff met with the Dean of Diversity and Compliance, who "told [plaintiff] the reason [he] had not been successful in obtaining other positions is because [he] did not know the answers to some

3

interview questions." (*Id*.)  In his letter brief, plaintiff explains that he did not know some answers because "during the interview for the Maintenance position" the interviewer asked "Oiler position questions rather than maintenance related questions." (*Id*.)

In addition to allegations of discrimination, plaintiff suggests, albeit not clearly at all, that he was retaliated against when the "F.D.N.Y. w[as] called on 11/7/2008 with [his] information it was a safety factor for all for faculty, staff, student community." (Doc. No. 1 at 6 (capitalization altered).)

Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 28, 2011.[4]  In his EEOC charge, plaintiff alleges he was discriminated and retaliated against based on race[5] and age on July 20, 2011 by "Peter Plevritis-Administrative Superintendent," presumably in a job interview, where "questions that were asked were questions for extermination, not laborer, laborer is moving furniture among other things." (Doc. No. 11, Ex. 1.)  The EEOC subsequently issued a Dismissal and Notice of Rights to Sue letter that plaintiff received on November 7, 2011. (Doc. No. 1 at 7.)  Plaintiff then filed the instant complaint on February 6, 2012. (Doc. No. 1.)

## DISCUSSION

### I. The Eleventh Amendment Bars Plaintiffs' ADEA Claims

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Schwartz v. York*

---

[4] Plaintiff mistakenly alleges that he filed a charge with the EEOC on May 4, 2011, (Doc. No. 1 at 4); it was not actually filed until September 28, 2011. (Doc. No. 11, Ex. 1).  Because the EEOC charge was "expressly referred to in the pleading, [it] may be considered incorporated by reference" and may be considered "without converting this [ ] into a motion for summary judgment." *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006).

[5] Plaintiff does not allege discrimination or retaliation based on race in his complaint.

4

*Coll.*, 06-cv-6754, 2009 WL 3259379, at *1 (E.D.N.Y. Mar. 31, 2009); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) (noting that a finding of a lack of subject matter jurisdiction makes other claims and defenses moot). When considering a motion to dismiss a *pro se* complaint, the Court is mindful that it must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Nevertheless, proceeding *pro se* "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). In considering a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The court, however, "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id*. (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Plaintiff's ADEA claims against CUNY and Vice Chancellor are barred pursuant to the sovereign immunity protections of the Eleventh Amendment. Under the Eleventh Amendment to the United States Constitution, a state and its agencies generally are immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–56 (1996). Absent a state's

express immunity waiver or the Congressional abrogation of state immunity, neither of which is applicable here, the Eleventh Amendment provides immunity to states and entities considered arms of the state, for relief of any kind brought in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–100 (1984); *McGinty v. State of N.Y.*, 251 F.3d 84, 95 (2d Cir. 2001) (internal quotations omitted).

The Second Circuit has held that CUNY's "senior colleges" and central administration are "arms of the state" and therefore immune from suit in federal court. *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 & n. 2 (2d Cir. 2004); *Sacay v. Research Found. of City Univ. of N.Y.*, 193 F. Supp. 2d 611, 625 (E.D.N.Y. 2002) ("CUNY Senior Colleges are arms of the State for Eleventh Amendment purposes."); *see also Schwartz v. York Coll.*, 2009 WL 3259379, at *2 n.8 (collecting cases). Moreover, to the extent that plaintiff is suing the Vice Chancellor in any official capacity, the Eleventh Amendment also bars those claims as well. *See.Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999); Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988).[6]

Here, however, no valid waiver or abrogation of immunity exists with respect to Plaintiff's ADEA age discrimination claim in this lawsuit. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding that no waiver or congressional abrogation exists with respect to

---

[6] Plaintiff names the "Office of General Counsel, Vice Chancellor of Legal Affairs, CUNY" as defendants. (Compl. (Doc. No. 1).) However, the Office of General Counsel and Senior Vice Chancellor of Legal Affairs is not a legally cognizable entity that can be sued apart from CUNY. *See Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n. 2 (2d Cir. 2004) (holding that suits must be brought against CUNY because its subdivisions are not legally cognizable entities apart from CUNY). Additionally, to the extent that plaintiff seeks damages against the Vice Chancellor of Legal Affairs individually, there is no individual liability under the ADEA. *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 22 (E.D.N.Y. 2006) (dismissing claims against individual because the ADEA does not provide for individual liability). Thus, all claims asserted will be treated as claims against CUNY and the Vice Chancellor of Legal Affairs in his official capacity.

Plaintiff also makes references to Hunter College in his complaint and opposition papers. Because Hunter College is a senior college of CUNY and is not a cognizable entity apart from CUNY, all claims asserted against Hunter College will be treated as claims against CUNY. *See Barry v. City Univ. of N. Y.*, 09-cv-8805, 2010 WL 1948336, at *1 (S.D.N.Y. May 13, 2010) (finding that CUNY is the proper party because Hunter College is a senior college of CUNY).

ADEA claims). Accordingly, plaintiff's ADEA claims against CUNY are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) as barred by the Eleventh Amendment.

**II. Additional Procedural Bars to Plaintiff's Claims**

"Exhaustion of administrative remedies through the EEOC is 'an essential element' of the . . . ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). Moreover, claims under the ADEA must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful act. *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 237-238 (2d Cir. 2007) (citing 29 U.S.C. § 626(d)(2)). Discrete acts such as termination, failure to promote and transfer are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Amtrak v. Morgan*, 536 U.S. 101, 113 (2002). In such circumstances, the law is clear -- "[w]hen a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts v. N.Y. City Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), abrogated by statute on other grounds, *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 693 (2d Cir. 1998). Both of these procedural requirements bar plaintiff's claims.

First, Plaintiff's EEOC charge only contained one claim for discrimination, one that allegedly involved a specific interview conducted by Peter Plevritis on July 20, 2011. *See* Wright Decl. Ex. A.[7] The EEOC charge does not contain any other alleged instances of discrimination or retaliation. *See id*. However, in his complaint, alleges that Patrick Tobin stated that "age is a factor," (Doc. No. 1 at 5), and that "Mr. [Peter] Monahan said that this [age] was the reason [he] was being held back" (Doc. No. 16). As noted above, plaintiff provides no

---

[7] While any claim against Plevritis is properly exhausted, plaintiff fails to state a plausible claim for relief as discussed more fully below.

7

dates or context for these alleged statements; as such, plaintiff has not demonstrated that any such allegations fall within the 300-day rule. Even if they did, they were not properly exhausted before the EEOC.

Claims not asserted before the EEOC may be pursued in subsequent federal court action if they are "reasonably related" to those that were filed with the agency. However, this exception is not applicable based on the current set of facts as alleged. First, any claims arising prior to July 20, 2011 are not "reasonably related" as plaintiff could have raised them at the EEOC. *See Guerrero v. FJC Sec. Services Inc.*, 2012 WL 2053535, at 5 (S.D.N.Y. June 5, 2012) (claims reasonably related only when based on conduct subsequent to that alleged in the EEOC charge). Moreover, reasonably related "means that despite the claimant's having failed to specify the precise charge, the EEOC likely would have investigated the conduct complaint of anyway." *Williams v. NYC Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (*per curiam*) (citation omitted). In his EEOC charge, plaintiff complains of being asked "discriminatory questions" where he was asked questions for "extermination, [and] not laborer" in a discrete interview by a particular individual. (Doc. No. 11, Ex. 1.) In contrast, the claims alleged in the instant complaint relate to specific allegations against other individuals presumably occurring at different times. Based on plaintiff's allegations, one can hardly say that the EEOC likely would have investigated wholly disparate incidents, individuals and allegations of discrimination and retaliation now referenced in plaintiff's complaint.

### III. Failure to State Claims for Relief

Defendants also seeks dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In deciding a Rule 12(b)(6) motion, the court must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). Further, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996). However, the court may also consider "matters of which judicial notice may be taken" and documents of which plaintiff "had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007)).

Plaintiff's complaint suffers from several defects in this regard. First, allegations

supporting the exhausted claim against Peter Plevritis do not in any way suggest discriminatory conduct. As alleged, plaintiff complains that Plevritis asked questions for an exterminator position, not that of a labor. Second, while plaintiff suggests that he was retaliated against, a claim that has not been exhausted, he fails to allege a nexus between any protected conduct and any adverse employment action, including his failure to successfully land the jobs he sought. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997) (To state a claim for retaliation under the ADEA, a plaintiff must allege that: "(1) [he] was engaged in an activity protected under the ADEA; (2) the employer was aware of plaintiff's participation in the protected activity; (3) [he] was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action.")[8] Finally, plaintiff's sole conclusory statement – that he was retaliated against when an unknown person called the "F.D.N.Y. . . . on 11/7/2008 with my information it was a safety factor for all for faculty, staff, student community" – hardly establishes protected activity or the requisite causal connection to an adverse action. *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 461–62 (S.D.N.Y. 2007) (dismissing retaliation claim where plaintiff failed to show causal connection between an adverse employment action and a protected activity).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED and plaintiff's claims are DISMISSED without prejudice.

In light of this Court's duty to liberally construe *pro se* complaints, plaintiff is granted leave to file an amended complaint alleging viable claims consistent with this opinion. *See Cruz v. Gomez,* 202 F.3d 593 (2d Cir. 2000). Should plaintiff elect to file an amended complaint, he

---

[8] Nowhere in his complaint does plaintiff suggest that he was retaliated for making his complaint to the EEOC.

must do so by September 5, 2013. Any filing must be clearly captioned "Amended Complaint," and bear the same docket number −12-cv-625 − as the original complaint. If plaintiff fails to amend his complaint within the time allowed, this action shall be dismissed and judgment shall enter.

The Clerk of Court shall mail a copy of this Memorandum and Order to the plaintiff by overnight mail and note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
      August 9, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge